STORY v. PERKINS, Deputy U. S. Marshal, et al.

JONES v. SAME.

(District Court, S. D. Georgia. August 20, 1917.)

1. CONSTITUTIONAL LAW ⬉83(2)—SELECTIVE DRAFT—CONSTITUTIONALITY OF DRAFT.

The selective draft law of May 18, 1917, does not contravene Const. Amend. 13, inhibiting slavery and involuntary servitude.

2. ARMY AND NAVY ⬉1—OPERATION AGAINST FEDERAL STATUTE.

The common-law right to "remain within the realm" cannot prevail against explicit provision of an act of Congress.

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. CONSTITUTIONAL LAW ⊂⊃38—OPERATION AGAINST FEDERAL STATUTE.

An Act of Congress can be held invalid only if contravening the Constitution, though inimical to the common law.

4. ARMY AND NAVY ⊂⊃20—SELECTIVE DRAFT—POWER OF CONGRESS.

The power of Congress under Const. art. 1, § 8, cl. 12, to raise and support armies, is plenary; so that, as it may summon to the army every citizen, it may summon such as it desires.

5. ARMY AND NAVY ⊂⊃5½—SELECTIVE DRAFT—"MILITIA"—"ARMY"—NATIONAL GUARD.

Const. art. 1, § 8, cl. 15, empowering Congress to call out the militia to execute the laws of the Union, suppress insurrection, and repel invasion, neither limits its use of the national army, which is not the militia, an "army" being a body of.men whose business is war, while the "militia" is a body of men composed of citizens occupied temporarily in the pursuit of civil life, but organized by discipline and drill, and called into the field for temporary military service when the exigencies of the country require it, nor prevents summoning to the army one who is a member of the National Guard.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Army; Militia.]

6. ARMY AND NAVY ⊂⊃1—EMPLOYMENT ABROAD—POWER OF CONGRESS.

Under the power given Congress by Const. art. 1, § 8, cl. 18, to make all laws necessary and proper for carrying into execution the foregoing powers, which include the power to provide for the common defense and general welfare, it may employ the army abroad.

Petitions for habeas corpus, one by John Story, the other by Albert Jones, against H. W. Perkins, Deputy United States Marshal, and another. Writs denied.

L. D. McGregor, of Warrenton, Ga., Thomas E. Watson, of Thomson, Ga., and J. Gordon Jones, of Cordele, Ga., for John Story and Albert Jones.

Erle M. Donalson, U. S. Atty., of Macon, Ga., for defendants.

SPEER, District Judge. [1] Albert Jones and John Story imprisoned in the Richmond county jail under commitment for unlawfully failing to register for military duty as required by the act of Congress of May 18, 1917, known popularly as the selective draft law, have made application for writs of habeas corpus. They allege that their imprisonment is unlawful. They charge that the enactment, made to raise a national army, is violative of the Constitution of the United States. It is insisted that the authority exercised by the United States under this legislation is void, because the act contravenes the Thirteenth Amendment. This provides that:

"Neither slavery nor involuntary servitude, except as punishment for crime whereof the parties shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction."

To agree to this contention we must conclude that a soldier is a slave. Nothing could be more abhorrent to the truth, nothing more degrading to that indispensable and gallant body of citizens trained in arms, to whose manhood, skill, and courage is and must be committed the task of maintaining the very existence of the nation and all that its people hold dear. The Grand Army of the Republic, the Confed-

erate Veterans, and the Sons of Veterans are not maintained to preserve the traditions of slavery. Nations do not pension slaves to commemorate their valor. They do not "give in charge their names to the sweet lyre"; nor does "sculpture in her turn give bond in stone and ever during brass to guard and to immortalize the trust."

[2-4] The sole additional ground of the petition is that by the common law it was the right of petitioners to "remain within the realm," and that this right should now be held to relieve them from military service beyond the borders of the United States. The reply is that the common law, that is, the immemorial English law, cannot prevail as to the United States or its people against the explicit provision of an act of Congress. Nor has a court of the United States power to declare an act of Congress invalid because it is inimical to the common law. The touchstone for such judicial power is the Constitution, and nothing else. It remains to be determined whether the Constitution has conferred authority on Congress to enact this law. Clause 12 of article 1, § 8, of the Constitution empowers Congress "to raise and support armies." This power is plenary. It is not restricted in any manner. Congress may summon to its army thus authorized every citizen of the United States. Since it may summon all, it may summon any. Said the Supreme Court in the case of United States v. Tarble, 13 Wall. 408, 20 L. Ed. 597:

"Among the powers assigned to the national government is the power 'to raise and support armies.' * * * Its control over the subject is plenary and exclusive. It can determine, without question from any state authority, how the army shall be raised, whether by voluntary enlistment or forced draft, the age at which the soldiers shall be received, and the period for which they shall be taken, the compensation he shall be allowed, and the service to which he shall be assigned."

[5] It is urged that by this legislation Congress has taken over and in this way conscripted the National Guard. This, it is said, is the state militia. It is contended under clause 15 of the article and section above quoted that such militia can be used only to execute the laws of the Union to suppress insurrection and repel invasion. Since these petitioners are not members of the National Guard, in no event could their rights in this way be affected. But the national army is not the militia. An "army" is a body of men whose business is war. Burroughs v. Peyton, 16 Grat. (Va.) 475. The "militia" is:

"A body of men composed of citizens occupied ordinarily in the pursuits of civil life, but organized by discipline and drill, and called into the field for temporary military service when the exigencies of the country require it." Id.

As we have seen, Congress in the exercise of the power to raise armies may summon to the colors every citizen. It follows that the states, even if they so desire, cannot defeat this power by enlisting such citizens in the state troops or National Guard. Was this possible, it would be also possible for the states to prevent altogether the raising of armies by Congress.

[6] There remains to be considered the contention that Congress cannot employ the national army to be created by virtue of this legislation in foreign lands or beyond the seas. If this is true, then indeed is our country impotent. Then must its people indeed suffer in their

own homes, in their cities, and on their farms all the horrors of invasive war. Its military leaders must ignore the settled principles of their science, that the best defensive is the most vigorous offensive. The keen swords of its sons, instead of flashing over the guard of the enemy and piercing his vitals, must be held immovable as if on an anvil, to be shattered by the reiterated blows of his hammer. Deprived of our aid in the field, successive defeats will visit and crush our allies. Their lands conquered, their navies taken, we must then in turn, solitary and alone, meet on our own soil the impact of victorious and barbarous legions whose laws do not forbid them service abroad, but which inspire their fierce and veteran armies to deeds of conquest in every clime.

Was this contention maintainable, the misguided men who for their personal ease advance it might all too late discover their fatal error. They would discover it in the flaming homesteads, in the devastated fields, in murdered brethren, in outraged wives and daughters, in their lands, their factories, their merchandise, their stock, their all, cooly appropriated by the conqueror, as his own, their institutions destroyed, homeless, landless, and beggars, to spend whatever interval of degraded life remains to them in abject slavery to the conqueror. But our organic law does not so shackle the gigantic energies of the great republic. After the enumeration of the powers of Congress, among them, as we have seen, "the power to raise and support armies," in clause 18 of article 1, § 8, it provides the power "to make all laws which shall be necessary and proper for carrying into execution the foregoing powers, and all other powers vested by this Constitution in the government of the United States, or in any department or office thereof." Here is the great reservoir of power to save the national existence.

It is said that there is no express power to send armies beyond the sea. True; but there is no express power to enact the criminal laws of the United States; none to convey the public domain; to build transcontinental railroad; nor to construct the Isthmian Canal; nor to create the Interstate Commerce Commission; nor to declare the Monroe Doctrine; nor to make the Louisiana Purchase; nor to buy Alaska; or to take over Porto Rico and the Philippines. This has all been done under the great power to promote the general welfare, just as the selective army will be created under the law here assailed "to provide for the common defense." And beyond and above all is the inherent power of every nation, however organized, to utilize its every man and its every energy to defend its liberty and to defeat the migration to its soil of mighty nations of ferocious warriors, whose barbarous inhumanity for three years has surpassed all others since the death of Attila, the Scourge of God.

The writs are denied.